The last case of this morning, vote the McIntosh County Board, number 227061. Hello, Your Honor. May it please the Court, my name is Jordan Miller and I represent Defendant Lisa Rodebusch in her individual capacity as the McIntosh County Court Clerk. This case presents the question of whether it would have been clear to a reasonable official in Defendant Lisa Rodebusch's position that it was illegal to terminate an individual, Plaintiff Lori Vaught, who wanted Rodebusch to win the election and who actively supported Rodebusch's campaign in numerous ways in June of 2020. But not publicly, correct? Your Honor, there was a conversation prior to the election in which it was made clear to Ms. Rodebusch that she would not support her publicly, which primarily meant liking or posting things on Facebook, correct? So that was the one facet of support that she was not... Going out and making speeches or rallies or parades, she wasn't going to do that either, was she? Well, she did numerous things. She, in fact... I know, but when she said not publicly, wouldn't it include the various things that people do publicly in political campaigns? I'm not sure that she was ever asked to do any of those things. Did she do any of those things? She... The testimony and the evidence in the record is that she did everything that she was asked to do with the exception of posting things on Facebook. So no, she wasn't asked to do any of those things. Well, did she do any of those things? You say everything she's asked to do, did she do anything? What does the record show? She provided information on how to obtain campaign shirts. She took group photos for using campaign materials. She made sure that campaign materials made it to local businesses. Yeah, but did she do anything publicly? Well, she did make a... She participated in a photograph, which was used in public materials, yes. Though, what she meant, and I think what she was thinking about when she said she didn't want to do anything publicly, was that. She also went door to door, which I would also argue is also a public act, and asking people to support Ms. Rodebusch in the campaign. So it wasn't just a private, internal desire that she won, though she did, in fact, want Ms. Rodebusch to win, and Ms. Rodebusch knew that Ms. Vaught wanted her to win. But yes, she did engage in numerous acts, which could be considered public, yes. Regardless... But not as much as Ms. Rodebusch wanted. In the light most favorable to the plaintiff, Your Honor, as found by the district court, as this court is required to find, correct. There is a finding by the district court that a reasonable jury could determine that Ms. Rodebusch was angry that the support wasn't sufficiently public in the manner that it would have been during the campaign of Judge Brandon Bridges. However, Ms. Rodebusch testified repeatedly that she believed that Ms. Vaught supported her in the campaign, and Ms. Vaught, in fact, did support her in the campaign, both in her own mind, internally, and through numerous acts, some of which were public. Plaintiff concedes that there is no Supreme Court precedent that it would... That to declare it to be illegal to terminate an employee under these circumstances. Do you fully agree, for purposes of this argument, with the district court's factual recitation? I am required to, in order to bring an interlocutory appeal, Your Honor, absolutely. I'm not allowed to challenge the underlying findings of the district court, whether I agree with them personally or not. I know you're not. That's why I wanted to know. Right. It's irrelevant. The findings of the district court are binding in terms of the facts. Of course, this court has de novo review on an interlocutory appeal only on the legal issue of whether or not it was clearly established to an individual in Ms. Rodebusch's position. So do you agree that Ms. Rodebusch could not have terminated someone for supporting her opponent? Absolutely, Your Honor. There's extensive case law going back to 1976, L. Rod B. Burns, through Branch V. Finkel, Rooten V. Republican Party of Illinois, Fair Truck Services. Do you agree that she couldn't have terminated her, that Ms. Rodebusch couldn't have terminated the plaintiff for choosing to sit the election out completely? Yes, Your Honor. I agree with that as well. If you look at Gandy Klein, for example, on the 10th Circuit, it explicitly references those who are non-affiliated, that they may state a claim and that non-affiliation is constitutionally protected. And what we have here is something that's parked in the middle of those two things. Terminating someone for not sufficiently supporting her is the finding, right? Correct, Your Honor. It is undisputed, again, that she did support her both internally and through numerous actions. The district court determined that a reasonable jury could find that that support wasn't sufficiently full-throated or not sufficiently public. And there is no case that either the district court, the plaintiff, or I have been able to uncover. How is that functionally different than either of the other ends of that? I choose not to participate in the election. You can't fire me. I choose to go full force for your opponent. You can't fire me. I choose to support you in a quiet way, but not public. Why doesn't that fit in the clearly established law? Your Honor, clearly established law, even in a non-excessive force case, requires that it be dictated by controlling authority or a robust consensus of cases. The precedent must be clear that every reasonable official would interpret it to establish the particular rule that the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know. If you were an official, and I was your employee, and you knew of the two cases on both sides, and I had quietly supported you, would you fire me? First of all, I would never fire you, Your Honor, Judge Carson, for any reason. Well, that's probably not good judgment on your part, but I'd probably give you other reasons. Sure. Again, the case is made clear to a reasonable official in Ms. Rodebusch's position that neutrality or something to the left of neutrality, meaning opposition, protected someone from the First Amendment. There is no case that anybody has been able to cite in this case that would make it clear that 80 percent support, 90 percent support, you know, that is both public and believed both by the plaintiff and by Ms. Rodebusch is covered by this constitutional maxim. Isn't this functionally the equivalent of someone who supported the opponent? No. Because what's happened in both cases is the elected official is mad because you didn't support them either at all or enough. I do not think it's functionally equivalent. The unlawfulness of terminating an employee has to be apparent. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. And Ms. Rodebusch, through her deposition throughout, fundamentally believed that a plaintiff was not covered by the First Amendment because she did support her. Had she studied the cases? Was that part of her testimony? Well, I don't think you are. They are. Sounds like you're saying she gave legal opinion that she's like, I was fully aware of what my rights were and I just felt this didn't cause a problem. She believed that plaintiffs supported her. And in her mind, with the level of knowledge of law that she had, she thought, thus, this was not something that would cover the plaintiff. Plaintiff cites to Roberts v. Winder, which is from 2021, which is the only case that any party has been able to uncover that mentions even the possibility of sufficiently unenthusiastic. Well, let me ask you this. Would you I mean, we're talking about whether something was clearly established. Would you agree it's a constitutional violation? Do you concede that? I don't agree. But for the purposes of today's qualified immunity, interlocutory appeal, we of course, we are bound by that. OK, so you're you're conceding for purposes of today of this case that there was a constitutional violation. We're required to, Your Honor. The only question is whether that violation was clearly established to a reasonable official in Ms. Rodebusch's position when she made the termination decision in June of 2020. There was a case in 2021, which is after the fact that, of course, would not have been made clear to Ms. Rodebusch at the time that there was potentially a claim for someone who supported an elected official in one election and was unenthusiastic in subsequent elections. However, the Tenth Circuit here in that 2021 case, what case was that? Roberts v. Winder explicitly noted that there were potentially numerous issues surrounding that that none of those issues were resolved. So while it is cited by the plaintiff, I would argue, Your Honor, that is not something that should be considered in examining a clearly established law. As I noted, the plaintiff concedes there is no Supreme Court case directly on point. There must be existing precedent or weight of authority that squarely governs this case. And I would submit, Your Honor, that no such authority exists that would make it clear that the contours of the right were sufficiently clear that a reasonable official in Ms. Rodebusch's position would not. You're really drawing. I mean, I was intrigued by this, both in the briefs and here, that that it's really critical to you that there was some support for her supervisor versus none. Correct. That that is a specific case law that you're saying is missing. Absolutely, Your Honor. It's not just some support. There is a significant support. Her her speech is simply that she doesn't want to speak. She's exercising her rights not to speak. She chooses not to publicly speak on Facebook, Your Honor. Yes. But I mean, I'm just having a look. I know you and both sides in the briefs all just accept that that that it's important for us to address whether we would analyze this differently because she provided some support but still refused public speaking or whether the outcome would be different if she provided no support in the campaign. Your Honor, yes, I think the case law is clear that a total noncommittal decision one way or the other is, in fact, covered by the First Amendment, which would make it clear to a reasonable official that a 50-50 neutrality is something that is covered by the First Amendment. That would seem to be a logical analysis, and I just don't know why I'm having a  I think it's so important that she provided non-speaking support, but because every case cited by the district court, every case cited by the plaintiff that's remotely within the realm of this type of First Amendment political affiliation case concerns either neutrality or active opposition. That is not what happened here. We have a lady who supported Ms. Vaught, Ms. Rodebusch in every way. Here's here's what the district court said. Rodebusch did not believe the plaintiff was actively and publicly supporting her. After the election, June 10, Rodebusch angrily confronted the plaintiff about it. According to the plaintiff, which we have to accept the plaintiff's version at this point, Rodebusch was mad and told the plaintiff she had apparently forgot what support is. OK, isn't that tantamount to saying you really didn't support me because you didn't do what support requires? It is materially different, Your Honor, in that plaintiff herself testified that she did support and wanted Ms. Rodebusch to admit that Ms. Rodebusch believes she did. Counsel, don't we have to accept what the district court said here? You do, Your Honor. On interlocutory appeal. You have to accept that. And we have a statement made by the defendant that you don't even know what support is. Meaning you don't. This is her deputy and her deputy is giving minimal, non-public support. And the clerk is mad because it isn't full-blown support. I mean, to the outside world, it looks like the deputy clerk maybe has some problems here. And that's why she was upset. Your Honor, as I've noted, both parties here have testified that they believe that Ms. Vaught wanted Ms. Rodebusch to win. Ms. Rodebusch believed that Ms. Vaught wanted her to win. She just apparently, in the light most favorable to the plaintiff, was unhappy with the significance or the amount of the support. Yes, Your Honor. But it had to have been clear to her that. Well, isn't that, why isn't that a First Amendment violation? Well, going forward, this court may determine that it is. Well, the district court did. And you're not contesting that. We cannot, Your Honor. You're only contesting prong two. That's the only thing we're able to do. So why isn't this a violation of First Amendment with obvious clarity? It is not with obvious clarity. Why not? Why not? She's mad at the plaintiff here for giving insufficient political support. It's the core of First Amendment activity. And she's saying you didn't do enough. Your Honor, the question here is whether. And they fired her. Okay. Your Honor, the question is whether or not it would have been clear to her in her position at the time, based on the. Whether it would be clear to a reasonable person. Correct. In her position. Correct. That you're going to fire somebody because you didn't give me enough support in the campaign. And without. That wouldn't be clear to a reasonable person. Without any case law making it clear. I'm not, I asked you about obvious clarity. I do not believe it's obvious clarity, Your Honor, because. Why not? Because she did support her in many different ways. And it's undisputed that that is the case. So I see my time has come. Do you have any other questions? All right. Thank you, counsel. Thank you. Members of the court, my name is Mark Hammons. I represent Lori Bott, the appellee in this case. Your questions have covered a lot of the things that I was going to say in my arguments. So I'm going to try and narrow down and not be redundant. I think it is obviously clear when you have a case like Gann versus Klein that says you cannot fire a person for being neutral in a campaign, nor does it make any difference if they were the opponent, if they were supporting your opponent in the case. Neither of those things take away a person's First Amendment protection. The defendant's argument is that if we can pick a point in the spectrum between neutrality and opposition, that that's somehow a new issue that a reasonably competent official could not figure out and could not apply from the existing case law. That argument, if it was accepted, would make essentially every First Amendment question dependent on facts that are not constitutionally significant. So on clearly established law, counsel, Mr. Rotobish argues that you don't have an on-point case. Not a factually on-point case. The defendant fired the plaintiff when the plaintiff supported the defendant's re-election, but didn't maybe support as actively as the defendant wanted. Is there any such case that is on all fours here? Not factually, Your Honor. But the qualified immunity standard does not require a case factually on the floor. Well, how about factually analogous? Well, I think Klein is factually analogous in the sense that it describes a spectrum of protected activity which encompasses support that is not satisfactory to the candidate. So this is Gan versus Klein? Gan versus, well, Gan versus Klein, the discussion was on the two polar opposites, neutrality versus opposition. How should I add that? I'm not sure it was factually on point. But fairly recently, this court in Shepard versus Robbins, 555-54-810, that's a 2022 case, emphasized we do not require plaintiffs to engage in a scavenger hunt for a prior case with identical facts. I mean, there is an obligation to apply reason to the decisions that have been made. And how do you apply reason in looking at the Gan case to say that the entire spectrum between neutrality and opposition is not encompassed in protected speech? Well, you know, going door to door doesn't seem like neutrality. And it doesn't even seem like non-public. I mean, going door to door is public campaigning. Well, Your Honor, I think that's an exaggeration of the facts, and certainly not what the court found. What were the facts on going door to door? Well, the facts were that she talked to some individuals and supported her in that manner, which is consistent with speaking privately and not publicly. That's part of the reason I put these four together. So she didn't walk a neighborhood and knock on doors and campaign for? No. There's not any activity that I'm aware of that I think is present within the record or that is found as part of the facts. It says in the opinion that she was going door to door to campaign for Rotebosch during off hours. She talked to some individuals, Your Honor. She did not go and canvas a neighborhood. I don't think that's what the court was saying in connection with that. Does it matter anyway to you? No. It doesn't. Because the issue, we've got a robust body of First Amendment law of which the political association component of free speech is just a part. We don't ignore the other cases that define First Amendment rights and focus on a splinter of that to try to create uncertainty in the law. It's part of the reason why I cited the case law on the right to anonymously campaign. Because law says you don't give up your right to privacy by saying, I want to speak. I just don't want everybody to know that I speak. And there are so many cases in which the court has said, for instance, you can't make somebody speak if someone chooses to speak. You can't require them to include certain statements within that speech. You can't make them be silent or include the language you want. You cannot make them speak publicly when they want to speak privately. You can't make them speak on every subject if they choose to speak on one subject. In the related area of affiliation, you can't require people who wish to affiliate to affiliate with people they don't wish to affiliate with. In the Christman case, this court described First Amendment rights as being capacious. They are broad. And a reasonable official would understand that, that you cannot try, by taking the narrowest look possible, to take away a person's First Amendment rights when you've been given guidance that says that you are not supposed to punish people because you don't like how they express themselves, which is exactly the case here. Do you think that this case may present facts that would offer a possible exception to the rule, as put out in Gan, where you have someone who says they're going to support you, and over the course of a campaign, it becomes apparent to the person that was told that's running for office that the person said they were going to support them, but they really weren't, that maybe their pledge to support them was disingenuous, and therefore, it's okay to terminate them, not because they spoke, but because that's indicia of some kind of untrustworthiness you don't want in your office? Heavens, I hope not, Your Honor. That would create an exception that would absorb the whole of the First Amendment, if we start saying, I don't believe the sincerity of what you're saying, and therefore, that can be a limitation on your rights to speak. And I think there's a lot of case law that says we don't measure First Amendment speech by how we think, whether or not we think it's sincere. Normally, this issue would be one that's related to causation. In other words, you supported me, so therefore, that means I didn't fire you. It's not credible to believe that. In this case, of course, causation is not the assuring appeal. So it could be, in your mind, on the merits, a defense. On the merits. Where it goes back and she says, well, I didn't fire her because she didn't support me. I fired her because she basically lied to me and said that she was going to support me, but she really didn't, so therefore, I don't trust her anymore. That might be, I think, too fine a line for First Amendment purposes, but it would certainly be a defense to say, I didn't fire her because she didn't support me because I thought she did support me, which is what the defendants are arguing, that she really believed she did support her, notwithstanding her protestations to the contrary and her conduct thereafter, which is set out in the court's opinion. So, yeah, it factors into causation, but causation isn't, at least in this context, a part of the qualified immunity inquiry. Qualified immunity inquiry is reasonableness, and that's why the case law also says it can apply with obvious clarity that a reasonable person should understand there is a consistent repetition of the term fair notice. Does the official have fair notice? And how do you not have fair notice when I can't fire you for being silent and I can't fire you for opposing me? How would that not be fair notice that you can't fire her because you're mad about the way she has expressed herself? The essential element of the First Amendment is expression. How did I express myself? Are you punishing me for how I expressed myself? And yes, she was. I didn't like how you expressed your support for me, a First Amendment issue, and therefore I'm punishing you because of your expression. That did not meet my requirements, and I doubt that you can find a First Amendment case that does not at least cast doubt on how anyone could believe such a thing. I don't really have anything else to add, Your Honor. If there are any questions, I'll be happy to answer those. Thank you, counsel. Thank you very much. Do we have any rebuttals? Very briefly, Your Honor, I would just note that various other First Amendment contexts referenced by counsel concerning anonymous speech involve cases that are far abroad. Talley v. California is about anonymous leafletting. McIntyre v. Ohio Election Commission concerns the distribution of anonymous campaign materials. None of them are within the First Amendment context related to political affiliation and employment, and thus they would not have made it clear to us. What if a plaintiff here actually had done even more to help on the campaign? That is, walk the neighborhood once a week, put lawn signs up, signed an endorsement, but was asked maybe to come to an election eve rally and stayed home. And then Ms. Roderich says, I'm really upset that you didn't show up for that. You're fired. Now, that goes way beyond neutrality, but wouldn't that still be a First Amendment violation? Your Honor, again, every case that has been looked at concerns the spectrum isn't opposition to support. It's opposition to neutrality. It's all on the left side of that. That's what existed. That was the state of the law at all times. The question is, if she makes a political judgment not to participate in an event and gets punished for it, why isn't that a First Amendment violation, even if she's done 95% of everything that's expected and asked of her to do? Your Honor, I would argue this was not a political judgment. It wasn't about a discussion of important political issues like is discussed in some of the cases. It was a speech judgment. She just didn't want to upset her friend. It wasn't a discussion of an important issue. It wasn't that she feared reprisals from a local government. Kim Metcalfe was her friend, and she didn't want to upset her. That's the testimony. Yeah, but she made a decision not to express herself in the campaign she got punished for. All right. In the light most favorable, she still supported her, and both parties— All right. I understand the argument. Thank you very much. Appreciate the spirited arguments, and the case will be submitted. Counsel are excused.